UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DAVID BOATRIGHT, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-08-56 |
| | § | |
| RAYMOND DUGAT COMPANY, L.C., *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

On this day came on to be considered Defendant Raymond Dugat Company's Motion for Summary Judgment. (D.E. 27.) For the reasons discussed below, Defendant's motion is hereby GRANTED IN PART and DENIED IN PART.

**I.     Jurisdiction.**

The Court has federal subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1333, which provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of … [a]ny civil case of admiralty or maritime jurisdiction."

**II.    Procedural Background.**

On February 21, 2008, Plaintiff filed his original complaint with the Court. (D.E. 1.) On May 16, 2008, Plaintiff filed his second amended complaint with the Court, the currently operative complaint in this action. (D.E. 18.) In both complaints, Plaintiff brings claims against two Defendants, Raymond Dugat Company, L.C. ("Raymond Dugat") and Garrett Construction Company ("Garrett"). (Id.) Plaintiff alleges that he suffered injuries as a result of both Raymond Dugat's and Garrett's negligence, and that Raymond Dugat is further liable based on the unseaworthiness of its vessel and for maintenance and cure. (Id.)

On November 14, 2008, Raymond Dugat filed the present motion for summary judgment (the "Motion"). (D.E. 27.) Raymond Dugat seeks summary judgment with respect to all of Plaintiffs claims against it. (Id.) Defendant Garrett did not join in the Motion. (Id.) Plaintiff filed his response in opposition to the Motion on December 4, 2008. (D.E. 32.) On December 17, 2008, the Court granted Raymond Dugat leave to file a reply brief in support of the Motion. (D.E. 45.) Raymond Dugat's reply brief was docketed on December 18, 2008. (D.E. 46.)

### III. Factual Background.

The facts, viewed in the light most favorable to the non-moving party (Plaintiff), are as follows:

On or around January 28, 2008, Plaintiff was working as the captain of Defendant Raymond Dugat's Boat, the TUG JAMES. (D.E. 27 at 3; D.E. 32 at 3.) He was tasked with picking up a barge from a dock owned by Defendant Garrett. (Id.) Defendant Garrett had no hands on deck to assist the tug's crew in letting the barge go. (D.E. 32 at 3.) The crew of the tug consisted of Plaintiff and a single deck hand, Mike Pellegrin. (Id.)

Mr. Pellegrin attempted to release the barge, but was unable to release one of the mooring cables. (PX-A (Plaintiff's Dep.) at 51:18-52:6.)[1] Plaintiff called his supervisor, Terry Ricks, to report the problem, and Mr. Ricks joined them on the tug. (PX-A (Plaintiff's Dep.) at 53:6-22.) Plaintiff, Mr. Ricks, and Mr. Pellegrin pulled on the mooring cable, but were unable to release it. (PX-A (Plaintiff's Dep.) at 55:6-16.) Fifteen to twenty minutes later, some of Defendant Garrett's employees arrived and released the cable. (PX-A (Plaintiff's Dep.) at 57:15-19.)

---

[1] "DX-__" refers to the exhibits to Defendant's motion, (D.E. 27), and "PX-__" refers to the exhibits to Plaintiff's opposition, (D.E. 32).

While pulling on the mooring cable, Plaintiff injured his right hip. (PX-A (Plaintiff's Dep.) at 55:17-56-19.) He was later examined by a doctor, who diagnosed him with various right-hip injuries. (DX-C (2/19/08 Letter from Thomas Maloney, M.D.))

Prior to this incident, on or about November 8, 2000, Plaintiff slipped and fell on a barge, injuring his right hip. (DX-A, ¶ 4; DX-B (Plaintiff's Dep.) at 32:2-18.) At that time, Plaintiff was employed by another company, Mid Coast Barge Company. (DX-B (Plaintiff's Dep.) at 32:21-33:1.) He underwent medical treatment and missed three to four months of work due to the injury. (DX-A, ¶ 4; DX-B (Plaintiff's Dep.) at 33:2-36:24.)

Plaintiff applied for and obtained employment with Defendant Raymond Dugat on at least two separate occasions between his first and second right-hip injuries—once on or around May 26, 2006, and once on or around September 8, 2007. (DX-A, ¶ 2.) In each case, Plaintiff filled out an employment application. (DX-A(1); DX-A(2).) Both applications included the questions, "Have you ever been injured?" and "List any physical defects." (DX-A(1) at 2; DX-A(2) at 2.) In 2006, Plaintiff declined to respond to either of these questions, leaving the answer lines blank. (DX-A(1).) In 2007, Plaintiff responded to the questions, stating "NO" and "NA," respectively. (DX-A(2) at 2; DX-B (Plaintiff's Dep.) at 118:17-119:12.)

**IV.   Discussion.**

    **A.   Summary Judgment Standard.**

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). "[O]n summary judgment, the moving party has the initial burden of establishing that there are no issues of material fact and that it is entitled to judgment in its favor as a matter of

law." Breen v. Tex. A&M Univ., 485 F.3d 325, 331 (5th Cir. 2007) (citing Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246-47 (5th Cir. 2003)). "If the moving party meets this burden, the burden then shifts to the non-moving party to point to evidence showing that an issue of material fact exists." Breen, 485 F.3d at 331 (citing Rivera, 349 F.3d at 247). "In determining whether summary judgment is appropriate, we view all of the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Breen, 485 F.3d at 331 (citing Coleman v. Sch. Bd. of Richland Parish, 418 F.3d 511, 515-16 (5th Cir. 2005)).

### B.    Maintenance and Cure.

"Generally, an employer 'must pay maintenance and cure to any seaman who becomes ill or suffers an injury while in the service of the vessel, regardless of whether either party was negligent.'" Johnson v. Cenac Towing Inc., 544 F.3d 296, 301 (5th Cir. 2008) (quoting Bertram v. Freeport McMoran, Inc., 35 F.3d 1008, 1012 (5th Cir. 1994)). "An employer, however, is allowed to rely on certain legal defenses to deny a claim for maintenance and cure." Johnson, 544 F.3d at 301 (citing Brown v. Parker Drilling Offshore Corp., 410 F.3d 166, 171 (5th Cir. 2005)). "Among these, the McCorpen defense applies when an injured seaman has 'willfully concealed from his employer a preexisting medical condition.'" Johnson, 544 F.3d at 301 (quoting Brown, 410 F.3d at 171.) "To establish a McCorpen defense, an employer must show that the seaman intentionally misrepresented or concealed medical facts; the non-disclosed facts were material to the employer's decision to hire the seaman; and a connection exists between the withheld information and the injury complained of in the lawsuit." Id. As discussed below, Defendant Raymond Dugat has met all three of these requirements in this case.

### 1. Intent to Conceal.

"'[T]he "intentional concealment" element does not require a finding of subjective intent.'" Brown, 410 F.3d at 174 (quoting Vitcovich v. Ocean Rover O.N., No. 94-35047, 1997 U.S. App. LEXIS 724, at *10 (9th Cir. Jan. 8, 1997)). The Fifth Circuit, adopting the Ninth Circuit's interpretation of the "intentional concealment" requirement, explained:

> [McCorpen's "intentional concealment" requirement] refers to the rule that a seaman may be denied maintenance and cure for failure to disclose a medical condition only if he has been asked to reveal it. Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information therefore satisfies the "intentional concealment" requirement.

Id.; see also Evans v. Blidberg Rothchild Co., 382 F.2d 637, 640 (4th Cir. 1967) (reversing judgment for maintenance, holding that the seaman "made two misstatements of fact which materially affected his eligibility for employment with the shipowner" and finding "deliberate misrepresentation").

It is undisputed that Plaintiff was asked in two separate employment applications whether he had "ever been injured." (DX-A(1) at 2; DX-A(2) at 2.) It is also undisputed that, despite having suffered an injury to his right hip, Plaintiff first declined to answer the question and then answered explicitly, "NO." (DX-A(1) at 2; DX-A(2) at 2.) These employment applications constitute "questionnaire[s] that [are] obviously designed to elicit [medical] information." Brown, 410 F.3d at 174. Plaintiff's failure to disclose his prior right-hip injury on the questionnaires, thus, satisfies the "intentional concealment" requirement. Id.

### 2. Materiality.

"The fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information material for the purpose of this analysis." Brown, 410 F.3d at 175. It is

undisputed that Defendant Raymond Dugat "ask[ed] a specific medical question on [its] application," *i.e.*, "[h]ave you ever been injured?" Id.; DX-A(1) at 2; DX-A(2) at 2. Furthermore, Defendant Raymond Dugat presented evidence that:

> The job of a tug captain at [Raymond Dugat] includes physically strenuous activity, including climbing and/or descending of ladders and/or stairs to reach the wheelhouse, galley, and engine room spaces; climbing from docks onto tugs and back; climbing from barges onto tugs and back; climbing ladders, stairs, and/or gangways to gain access to offshore rigs serviced by tugs; and performing maintenance and minor repairs on tugs.

(DX-A (Dungan Decl.), ¶ 3.) Plaintiff, rather than disputing this evidence, states merely that "[a] jury could find that the most material fact regarding plaintiff's abilities was the fact that he had been doing that work successfully for a number of years …" (D.E. 32 at 10.)

Whether Plaintiff was performing these duties successfully prior to his second right-hip injury is irrelevant to the Court's analysis of whether the existence of his first right-hip injury is relevant to his employer's determination of whether he is physically able to perform his job duties. See Brown, 410 F.3d at 175. The Court finds that the existence of Plaintiff's first right-hip injury—an injury so severe that Plaintiff was required to spend three to four months away from work recuperating, (DX-B (Plaintiff's Dep.) at 33:2-36:24)—is relevant to such determination. Id. Such an injury could certainly affect Plaintiff's ability to perform strenuous physical activities, including the strenuous physical activities associated with being a tug boat captain. Brown, 410 F.3d at 175. The Court, thus, finds that the materiality requirement is met.

### 3. Causality.

"'Case law reflects that even an intentional misrepresentation of medical facts which would have been material to the employer's hiring decision is insufficient to overcome an obligation of maintenance and cure, barring a connection between the withheld information and the injury which is eventually sustained.'" Brown, 410 F.3d at 175 (quoting Howard v. A.S.W.

Well Serv., No. 89-2455-L, 1991 U.S. Dist. LEXIS 21156, at *4 (W.D. La. Dec. 6, 1991)). "'There is no requirement that a present injury be identical to a previous injury. All that is required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage.'" Brown, 410 F.3d at 176 (quoting Quiming v. International Pacific Enterprises, Ltd., 773 F. Supp. 230, 236 (D. Haw. 1990)). The Fifth Circuit has found the requisite causal connection where a plaintiff's current injuries are to the same part of the body as the prior injuries. Brown, 410 F.3d at 176 ("Because [Plaintiff's] injuries were to the same location of the lumbar spine, the causal link between the concealed information and the new injury was established …"). It is undisputed that Plaintiff's prior and current injuries are both to his right hip. (PX-A (Plaintiff's Dep.) at 55:17-56-19; DX-A, ¶ 4; DX-B (Plaintiff's Dep.) at 32:2-18.) Because these injuries are "in the same location," the requisite causal link exists. See Brown, 410 F.3d at 176.

### C.   Unseaworthiness.

"General maritime law imposes a duty on a ship owner to provide a seaworthy vessel." Comeaux v. T. L. James & Co., 666 F.2d 294, 298-299 (5th Cir. La. 1982) (citing Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 549 (1960); Smith v. Ithaca Corp., 612 F.2d 215, 219 (5th Cir. 1980); Hlodan v. Ohio Barge Line, Inc., 611 F.2d 71, 74 (5th Cir. 1980); Weeks v. Alonzo Cothron, Inc., 466 F.2d 578, 581 (5th Cir. 1972)). "The warranty of seaworthiness includes a seaworthy crew and the ship owner's duty is breached by providing a 'defective' or inadequate crew." Comeaux, 666 F.2d at 299. "'Of course, to be inadequate or improperly manned is a classic case of an unseaworthy vessel.'" Comeaux, 666 F.2d at 299 (quoting June T., Inc. v. King, 290 F.2d 404, 407 (5th Cir. 1961); citing Boudoin v. Lykes Bros. S.S. Co., 348 U.S. 336 (1955); Vallot v. Central Gulf Lines, Inc., 641 F.2d 347, 350 (5th Cir. 1981); Moschi v.

Steamship Edgar F. Luckenbach, 424 F.2d 1060, 1061 (5th Cir. 1970); Clevenger v. Star Fish & Oyster Co., 325 F.2d 397, 400 (5th Cir. 1963)).

There were only two crew members manning the TUG JAMES at the time of Plaintiff's injury—Plaintiff and a single deckhand, Mr. Pellegrin. (D.E. 32 at 3.) Plaintiff asserts in its opposition that this crew was inadequate, and Defendant Raymond Dugat provides no evidence, in either its Motion or Reply brief, to refute this assertion. See Comeaux, 666 F.2d at 299. Accordingly, an issue of fact remains with respect to whether or not the two-person crew manning the TUG JAMES at the time of Plaintiff's injury was sufficient to render the TUG JAMES seaworthy. Id.

### D.     Jones Act Negligence.

"The burden to prove causation in a Jones Act case is 'very light' or 'featherweight.'" In re Cooper/T. Smith, 929 F.2d 1073, 1076 (5th Cir. 1991) (citing Landry v. Two R. Drilling Co., 511 F.2d 138, 142 (5th Cir. 1975)). "Under the Jones Act, a defendant must bear the responsibility for any negligence, however slight, that played a part in producing the plaintiff's injury." In re Cooper/T. Smith, 929 F.2d at 1076-1077 (citing Landry v. Oceanic Contractors, Inc., 731 F.2d 299, 302 (5th Cir. 1984)). "Although in Jones Act cases a 'jury is entitled to make permissible inferences from unexplained events,' summary judgment is nevertheless warranted when there is a complete absence of proof of an essential element of the nonmoving party's case." n re Cooper/T. Smith, 929 F.2d at 1077 (quoting Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987)).

It cannot be said that there is a complete absence of proof on any of the essential elements of Plaintiff's negligence claim. A jury could plausibly determine that Defendant Raymond Dugat breached its duty of care in failing provide Plaintiff with a means for safely

removing the mooring cable from the dock. (See PX-A (Plaintiff's Dep.) at 51:18-52:6, 55:6-16.) Accordingly, an issue of fact remains with respect to Plaintiff's negligence claim.

**V.     Conclusion.**

Based on the foregoing, Defendant Raymond Dugat's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART:

(1) Summary judgment with respect to Plaintiff's maintenance and cure claim against Defendant Raymond Dugat is GRANTED;

(2) Summary judgment with respect to Plaintiff's unseaworthiness claim against Defendant Raymond Dugat is DENIED; and

(3) Summary judgment with respect to Plaintiff's negligence claim against Defendant Raymond Dugat is DENIED.

SIGNED and ORDERED this 20th day of January, 2009.

_____
Janis Graham Jack
United States District Judge